JOHN HOGAN, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

The bridge across Spuyten Duyvil creek, known as "Kingsbridge," is embraced within the provisions of the act of 1869 (chap. 826, Laws of 1869), making it the duty of the board of commissioners of the Central park to prepare maps and plans of proposed changes in streets and avenues within certain territory therein described, and also the plans and location of all bridges, etc., over the Harlem river and Spuyten Duyvil creek, and providing that no proceedings should be had for any

improvement "within the area described," unless said commissioners shall concur therein; and is also within the provisions of the act of 1870 (chap. 797, Laws of 1870), transferring the powers of the commissioners to the department of public parks, and conferring upon the officers named full power to build and construct any and all bridges, etc., across said river and creek, which may be planned or located.

An intention to except Kingsbridge from the operation of said acts cannot be inferred from the provisions of the tax levy acts of 1867, 1868, 1869 and 1870 (chap, 586, Laws of 1867; chap. 853, Laws of 1868; chap. 867, Laws of 1869; chap. 383, Laws of 1870), authorizing moneys to be raised for "a new bridge at Kingsbridge."

Accordingly *held*, that the corporation of the city of New York was not liable for damages sustained by plaintiff by reason of his having been prevented from performing a contract made, in August, 1870, by him with the commissioners of public works for building a new stone bridge on the site of Kingsbridge, it not appearing that the contract was made with the concurrence of the board of commissioners of Central park, or of the department of public parks.

(Argued December 14, 1876; decided December 22, 1876.)

APPEAL from judgment of the General Term of the Court of Common Pleas of the city and county of New York affirming a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial.

This action was brought to recover damages alleged to have been sustained by plaintiff by reason of his having been prevented by defendant from performing a contract made by him with defendant.

The complaint alleged that, in August, 1870, defendant, by its commissioner of public works, entered into a written contract with plaintiff by which the latter agreed to build a new stone bridge over Spuyten Duyvil creek, on the site of Kingsbridge, in the city of New York, for which defendant agreed to pay $29,000; that plaintiff immediately thereafter prepared to perform said contract, purchased stone, etc., but that defendant refused to allow him to proceed with the work, and notified him that it refused to comply with the contract on its part.

The defendant admitted the making of the contract with the commissioner of public works, but that the latter officer

was not authorized to enter into the contract without the concurrence of the commissioners of Central park or the department of public parks, and upon this ground the complaint was dismissed upon the opening of plaintiff's counsel on the trial.

Further facts appear in the opinion.

*John S. Lawrence* for the appellant. The legislature had, by its successive appropriations of money raised by taxation, authorized the building of the bridge, and it was competent for it to give such authority. (*Granby* v. *Thurston*, 23 Conn., 416; *Shaw* v. *Dennis*, 10 Ill., 405; *Norwich* v. *Cown*, 13 Pick., 60.)

*D. J. Dean* for the respondent. The legislature may control and regulate the conditions and manner of executing public work. (*In re P. E. Pub. School*, 46 N. Y.; *Presb. Ch.* v. *Mayor, etc.*, 5 Cow., 538.) The contract by the commissioner of public works was *ultra vires*, and no recovery can be based thereon. (*Brady* v. *Mayor, etc.*, 20 N. Y., 312; *Suprs.* v. *Bates*, 17 id., 242; *Smith* v. *Mayor, etc.*, 10 id., 508; *Suprs.* v. *Bates*, 2 Den., 112.)

CHURCH, CH. J. The plaintiff was nonsuited upon the opening of the counsel to the jury, upon the ground that the commissioner of public works had no power to enter into the contract for building the bridge in question without the concurrence of the commissioners of Central park or of the department of public parks.

The contract was entered into in August, 1870, after the passage of the act chapter 826 of the Laws of 1869, and chapter 797 of the Laws of 1870, by which it is claimed in effect that the commissioner of public works was prohibited from making the improvement without the concurrence of the park commissioners.

The act of 1869 makes it the duty of the park commissioners to prepare plans, maps, etc., showing where changes may be made for the public benefit, in the location or grade of

any of the streets or avenues in certain territory in Westchester county lying west of Hudson river, and south of the village of Yonkers, and also of such streets, etc., as can be laid out or discontinued, and also for the improvement of Harlem river and Spuyten Duyvil creek, and the plan and location of all bridges, tunnels, and other means of transit across or under said river or creek. It was further provided that no proceeding should be had for any improvement "*within the area above described,*" until the report of said commissioners and the action of the legislature thereon unless the park commissioners should concur in authorizing such improvement. The act of 1870 transferred the powers of the commissioners of the Central park to the department of public parks, and provided that the department of public parks and the county judge and treasurer of Westchester county should have full power and authority to build and construct by contract or otherwise all bridges, tunnels and other means of transit across or under Harlem river or Spuyten Duyvil creek authorized to be planned and located by the park commissioners. The language of these acts is sufficiently comprehensive to embrace the bridge in question known as Kingsbridge as well as all other bridges then existing, or those authorized to be thereafter constructed. But it is insisted that Kingsbridge was not intended to be included. This is predicated mainly upon certain action of the legislature, which it is claimed recognized and adopted the location of this bridge, and specifically provided for its rebuilding in a different manner from that prescribed for building the bridges authorized by said acts.

The legislature of 1867 (by act chap. 586), authorized $5,000 to be raised for a "new stone bridge at Kingsbridge," and the legislature in 1868 (chap. 853), and in 1869 (chap. 867), and in 1870 (chap. 383), authorized to be raised, in all, the sum of $40,000, for the same purpose, by tax upon the county of New York. The bridges, authorized to be built by the park commissioners and authorities of Westchester county, by the act of 1870, first referred to, were to be paid for by the issue of bonds by the respective counties of Westchester

and New York. There is considerable force in the position of the learned counsel for the plaintiff, that the legislature did not intend to include existing bridges, and especially Kingsbridge, within the restrictive clauses of the acts of 1869 and 1870, and it cannot be denied that there is some incongruity between these various acts. We must, however, give effect to these acts, so as to carry out the purposes and intent of the legislature, if it can be done without violating any established rule of construction. Looking at the purpose and objects of the acts of 1869 and 1870, it is manifest that the legislature intended to create a general plan for improving Harlem river and Spuyten Duyvil creek, which constitute the dividing line between Westchester and New York counties, and for improving and laying out the various roads, streets and avenues, leading to, and the bridges and tunnels across or under the same. This object might involve a radical change in the plan and location of existing structures, as well as new ones authorized to be built. We may take judicial notice of the fact, that Harlem river and Spuyten Duyvil creek constitute a connecting water communication between East and Hudson rivers, and the power conferred by the acts aforesaid are sufficient to authorize the construction of a ship channel between the two rivers. At all events, the improvements contemplated might necessitate a change in the plan, and perhaps in the location, of existing structures, and the purpose of the legislature, expressed and implied in the acts referred to, might be frustrated, by excepting from their operation any of the structures for crossing said streams. For the legislature to appropriate sums, for a series of years, including 1869 and 1870, for the specific purpose of rebuilding a stone bridge at Kingsbridge, would seem to be inconsistent with the provision for building bridges authorized by the general acts of 1869 and 1870, but I think the inference sought to be drawn from these appropriations is capable of a legitimate answer. The appropriations commenced sometime prior to the passage of those acts and they are each contained in an act known as the annual tax levy, which

contains the appropriations for carrying on the government of the city, and embraces a very large number of items. While proper effect is to be given to the language of the item making appropriations for this bridge in those acts, it cannot be supposed that the attention of. the legislature, in following the prescribed form, was as closely drawn to the subject as it was while maturing and passing acts for that specific purpose; and an apparent inconsistency of language, unless entirely irreconcilable, should not be allowed to override the expressed intent of the legislature in respect to the general subject under consideration. The tax levy of 1869 was passed the day after the general act of that year, but the provision for issuing bonds was not enacted until 1870. The raising by tax of a fund to rebuild the bridge, is not inconsistent with the provision for making plans and fixing the location of bridges by the park commissioners, nor is the raising of this fund absolutely irreconcilable with the provision in the act of 1870 for paying for the expenses by issue of bonds, as the terms of that provision are that only such an amount of bonds shall be issued *as are necessary* to raise the sum required for that purpose. If the city or county of New York had funds in its treasury specifically applicable to its proportion of the expense of one or more of the bridges or structures, no law would be violated by using such means for that purpose, and omitting to issue bonds to that extent. If money sufficient is raised by tax, no bonds will be necessary. The language of the legislature, in creating the general plan, is broad and comprehensive. The act of 1869 includes " all bridges, tunnels, and all other means of transit across or under said river or creek," and the prohibition is against making any improvement *within the area above described*, with certain exceptions, unless the park commissioners consent. The criticism that the words " within the area described," does not include the bridges, cannot be sustained. True there is an " area " described as west of the Hudson river and south of Yonkers, and reference is made to that "area" in respect to streets, avenues, etc.; but that word, in the prohibitory clause,

was used after the bridges, etc., across and under the river and creek, had been specified, and this channel should be regarded as a part of the "area" referred to in that clause, and it is too technical to restrict it literally to the first "area" described, in which were the streets, avenues, etc.

The act of 1870 confers power upon the officers named, to build and construct "any and all bridges, tunnels, and other means of transit across or under Harlem river and Spuyten Duyvil creek," which may be planned or located. I think the proper construction of these acts is to give the park commissioners the entire control of all the bridges over the river and creek, and that an intention to except Kingsbridge from the operation of these acts cannot be inferred from the provision in the tax levy acts referred to. The plaintiff may have an equitable claim against the city for compensation, but from the foregoing views, it follows that the commissioner of public works had no authority to enter into the contract in question without the concurrence of the park commissioners, and that this action cannot be sustained.

The judgment must be affirmed.

All concur; ANDREWS, J., absent.

Judgment affirmed.